UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEMAJIO JEROME ELLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:14-CV-1575 JD |
| | ) |
| SERGEANT MYERS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

Demajio Jerome Ellis, a *pro se* prisoner, is proceeding on several claims[1] including the one at issue in this partial motion for summary judgment. At issue in this motion is his claim that Sergeant Myers, Sergeant Sexton, and Officer Backus placed him in a freezing cold cell wearing only boxer shorts for three hours on November 22, 2013, in violation of the Eighth Amendment. The defendants move for summary judgment on the ground that Ellis did not exhaust his administrative remedies before filing this lawsuit as required by 42 U.S.C. § 1997e(a).[2]

"Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). In ruling on a summary judgment motion, the court views all of the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It cannot "make credibility determinations, weigh the

---

[1] The other claims on which Ellis was granted leave to proceed are that Sergeant Myers, Sergeant Sexton, and Officer Backus used excessive force against him around 3:00 p.m. on November 22, 2013, in violation of the Eighth Amendment; that Sergeant Myers denied him medical treatment around 3:00 p.m. on November 22, 2013, in violation of the Eighth Amendment; and that Nurse Lukac denied him medical treatment around 3:30 p.m. on November 22, 2013, in violation of the Eighth Amendment. DE 12.

[2] 42 U.S.C. § 1997e(a) provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.* Nevertheless, summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

The United States Court of Appeals for the Seventh Circuit takes a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

Here, the parties agree that there was a grievance system and that Ellis was obligated to use it before filing suit. The parties agree that Ellis filed Grievance Number 80436 and that he appealed that grievance to the final step of the process. They agree as to what words he wrote in Grievance 80436 and what words he wrote in his appeal from the denial of 80436. The sole disagreement here is whether the words he wrote satisfied his obligation to exhaust his administrative remedies.

In Grievance 80436, Ellis wrote:

> While getting escorted back to my cell B6-204 by Sergeant Myers, Sergeant Sexton, and Officer Backus from receiving after finally entering B-Pod while doing nothing wrong at all, I was rushed up off my feet and slammed on the top of my head onto a mattress by Myers, Sexton, and Backus and repeatedly kneed, elbowed, and

2

kicked while wearing handcuffs and leg irons. During the incident Myers stated that I'm going to learn what shift to throw shit on. He also stated talk that shit now. He was also squeezing on my cuffs while asking me are they tight enough. While escorting me back to receiving, Sergeant Myers had the dog leash connected to the handcuffs. While the leash was also ran threw underneath the leg irons. While he was lifting up on the leash making it impossible for me to walk. He was also pushing my head down telling me to suck my little dick. While in the hallway Myers and Sexton kept putting me down on the ground and picking me up. While entering the "Intake Receiving Room" Myers and Sexton hit my head on the door siding. While Officers were taking off my clothes, Sgt. Myers was putting weight on my head with his knee smashing my chin in. Then when I turned my head, he smashed his knee on my jaw. While Myers was taking off the cuffs, he told Sexton, "If this little bitch turn around, spray his ass with the whole can." I told him that I need to see medical and he said you ain't seeing shit. Then I was left in a receiving cell just in my boxers with no access to a toilet or any water. **It was also cold and I had to sit on cold concrete.**

DE 38-4 (emphasis added).

The defendant argues that this grievance was "focused solely on an alleged use of excessive force." DE 39 at 1. Though the grievance was clearly focused on the excessive force claims, it also included other issues which arose during this incident. In addition to complaining about multiple types of excessive force, Ellis wrote about verbal abuse, denial of medical treatment, denial of access to a toilet, denial of access to water, and the temperature of the receiving cell. Though the excessive force claims are explained in greater detail than the other claims, the defendants acknowledge that the "claim regarding the cold cell was not required to be plead with precise particularity . . .." DE 39 at 6. "When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Here, Ellis' grievance adequately raised his claim about having been placed in a cold cell.

In response to Grievance 80436, Ellis received this reply:

> This matter was addressed and also referred to Internal Affairs. Documents reveal that you started fighting, physically resisting and trying to spit on the Sergeants as they were escorting you back to B-Pod. First responders were assembled (2-Officers & 2-Sergeants) and helped escort you back to receiving cell #1 where you continued to physically resist staff. You were written up on a Class-A 102 Assault on Staff and found guilty through the Disciplinary Process. Staff only react to ensure your safety as well as there's. [sic] Please refrain from verbal & physical confrontation with staff, and do your part to promote respect & dignity with all staff and offenders alike.

DE 38-6. This response makes no mention of the cold cell or any of the other specific allegations raised in the grievance. The response merely explains that the use of force was justified because Ellis was resisting and fighting. It makes no mention of whether Ellis was slammed into a mattress, repeatedly struck while restrained, verbally abused, handcuffed improperly, restrained so that he was unable to walk, pushed to the floor in the hallway, shoved into a door frame, stripped of his clothing, kneed in the jaw, denied medical treatment, left wearing only boxers, or denied access to a toilet, denied access to water, or left in a cold cell. Though not specifically addressed in the response, all of those allegations were mentioned in Grievance 80436. The response stated that "[t]his matter was addressed and referred to Internal Affairs." *Id.* The response does not define the words "this matter," but there is no evidence to indicate that they mean anything other than the events alleged in Grievance 80436. Given that Grievance 80436 adequately raised a claim about a cold cell, "this matter" should have included it as well.

Ellis appealed the denial of his grievance. His appeal did not specifically mention the cold cell. The defendants argue that because he did not mention the cold cell in his grievance appeal, he did not exhaust his administrative remedies. Ellis argues that the grievance policy does not require that he mention every fact in his grievance appeal. The parties agree on the pertinent language of

4

the grievance policy, but they do not agree on its meaning. The relevant paragraph of the policy says:

> Appeals must address the basic issue of the grievance. The appeal may contain additional facts or information regarding the original issue and may raise concerns regarding the response from the previous level, but it shall not raise new or unrelated issues. The offender must state why the previous response was unacceptable, thereby establishing a rationale for the appeal and the basis for a reinvestigation. The appeal must be legible, signed and dated by the offender, unless the offender cannot sign the appeal and a staff member has indicated why the offender was not able to sign.

DE 38-7 at 23.

Ellis argues that when the policy states he "must address the basic issue," it means he need not repeat everything mentioned in the original grievance. He "agrees that the use of excessive force is the main, but not the only issue at hand." DE 47 at 1. As previously explained, he is correct that the use of excessive force was not the only issue arising out of this continuous sequence of interactions with these guards. As previously explained, being left in a cold cell was the concluding event and it was adequately raised in Grievance 80436. Ellis argues that because he addressed the basic issue of his grievance, he adequately exhausted.

The defendants do not dispute that Ellis stated the basic issue. Neither do they argue that he was required to restate everything mentioned in the original grievance. Rather, they argue that the policy required Ellis to "state why the previous response was unacceptable, thereby establishing a rationale for the appeal and the basis for a reinvestigation." DE 38-7 at 23. They argue that his "appeal failed to provide any rationale to investigate or address an issue regarding his cell, and therefore his claim of being left in an allegedly cold cell has not been properly exhausted." DE 44 at 1.

In his appeal from the denial of Grievance 80436, Ellis wrote:

> I'm filing this appeal because I was assaulted by Sergeant Myers, Sexton, and Officer Backus. I was not fighting, resisting, or trying to spit on anyone. I wasn't doing anything wrong at all. T. Bean responded the same day that he received my grievance. He did not do a thorough investigation.

DE 38-5. In that appeal, Ellis explained that the reason why the prior response was unacceptable and warranted a re-investigation was that the first investigation was not thorough. An indication of its lack of thoroughness is that the grievance response omits any reference to his allegations that he was verbally abused, stripped to his boxers, denied medical treatment, denied a toilet, denied water, and left in a cold cell. Thus, the appeal presented "a rationale for the appeal and the basis for a reinvestigation." DE 38-7 at 23. The Court sees no reason why a *pro se* prisoner should be expected to engage in a greater level of specificity than that provided in the prison's own cursory response. "The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Here, Ellis did that and he exhausted his administrative remedies.

For these reasons, the motion for summary judgment (DE 38) is **DENIED**.

ENTERED: September 21, 2015

                                                    /s/ JON E. DEGUILIO
                                                    Judge
                                                    United States District Court